IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:24-CV-409-FL

| | |
|---|---|
| PHILIP ROESEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM IN SUPPORT |
| v. | ) OF FEDERAL DEFENDANTS' |
| | ) MOTION TO TRANSFER |
| UNITED STATES DEPARTMENT | ) VENUE AND STAY |
| OF HEALTH AND HUMAN SERVICES, | ) DEADLINE FOR FILING |
| et al., | ) RESPONSIVE PLEADINGS |
| | ) |
| Defendants. | ) |

Federal Defendants, by and through the United States Attorney for the Eastern District of North Carolina, respectfully submit this memorandum of law in support of their motion to transfer venue of this matter to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a) and to stay the deadline for filing responsive pleadings. Plaintiff Philip Roesel ("Plaintiff") has sued Federal Defendants to challenge his termination from a federal program, which resulted from the government's reasonable suspicion that Plaintiff engaged in fraud or abusive conduct. In order to participate in that program, Plaintiff executed an agreement containing a forum selection clause identifying the District of Columbia as the appropriate forum. Accordingly, Federal Defendants move to transfer this matter under § 1404(a) consistent with the parties' agreement. Federal Defendants further move for an order staying the time for filing responsive pleadings until 60 days after the motion to transfer is decided to permit time to compile the administrative record

1

and for another U.S. Attorney's Office to prepare an appropriate responsive pleading. For the reasons assigned below, Federal Defendants respectfully request the motion to transfer and motion to stay be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

According to his Complaint,[1] Plaintiff is a resident of Wilmington, North Carolina, "who has served for nearly a decade as an authorized agent/broker for consumers seeking to apply for health insurance through the exchanges[2] created by the Affordable Care Act." Docket Entry ("D.E.") 1 at ¶ 1. Plaintiff alleges that on October 26, 2023, Federal Defendants, through the Centers for Medicare & Medicaid Services ("CMS"), provided Plaintiff with a Notice of Immediate Suspension of Plan Year ("PY") 2023 Exchange Agreements because CMS had reasonable suspicion he was engaged in fraud or abusive conduct. D.E. 1. at ¶ 67. Plaintiff provided rebuttal evidence to CMS's notice of suspension. *Id.* at ¶ 71. After considering the rebuttal evidence, on December 6, 2023, CMS terminated Plaintiff's PY 2023 agreements and prohibited Plaintiff from entering into agreements as an agent/broker with CMS until December 6, 2026. *Id.* at ¶ 72. Plaintiff requested reconsideration of his termination, which CMS denied. *Id.* at ¶ 87.

---

[1] Federal Defendants recite allegations in Plaintiff's Complaint only for the purposes of this motion. Federal Defendants do not concede the veracity of any facts or legal conclusions and will file responsive pleadings at the appropriate time.

[2] The Affordable Care Act "requires the creation of an 'Exchange' in each State where people can shop for insurance, usually online. An Exchange may be created in one of two ways. First, the Act provides that '[e]ach State shall . . . establish an American Health Benefit Exchange . . . for the State.' Second, if a State nonetheless chooses not to establish its own Exchange, the Act provides that the Secretary of Health and Human Services 'shall . . . establish and operate such Exchange within the State.'" *King v. Burwell*, 576 U.S. 473, 482 (2015) (internal citations omitted).

2

On May 8, 2024, Plaintiff initiated his first civil action against Federal Defendants in the Northern District of Texas. *See Roesel v. U.S. Dept. of Health & Human Serv., et al.*, N.D. Tex. Case No. 3:24-cv-01104-B. He voluntarily dismissed that lawsuit the next day. N.D. Tex. D.E. 7. One day later, Plaintiff filed this lawsuit. D.E. 1. He asserts seven claims challenging his termination which allege, *inter alia*, Federal Defendants deprived him of due process, exceeded their statutory authority under the Affordable Care Act ("ACA"), violated agency regulations, and imposed an arbitrary penalty in preventing Plaintiff from participating as an agent/broker on the exchanges until December 2026. *See generally*, D.E. 1 at ¶¶ 119–172. He seeks a declaration that Federal Defendants violated the ACA and relevant regulations; an injunction that, in essence, would enable him to resume his participation as an agent/broker on the exchanges; and attorney's fees and costs. *Id.* at 46–48.

The ACA and implementing regulations require individuals like Plaintiff to agree to certain terms in order to be authorized to serve as an agent/broker on the exchanges. *See* 42 U.S.C. § 18032(e); 45 C.F.R. § 155.220(d). Pursuant to 45 C.F.R. § 155.220(d), these terms are memorialized in the "Agent Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform" (the "Broker Agreement"). *See* Exhibit 1 to Wu Declaration. Plaintiff agreed to these terms when he registered as an agent/broker on the CMS portal for PY 2023. *See* Exhibit 2 to Wu Declaration. And one of the terms is a forum selection clause, which provides:

> *Governing Law and Consent to Jurisdiction:* This Agreement shall be governed by the laws and common law of the United States of America,

> including without limitation such regulations as may be promulgated from time to time by the HHS or any of its constituent agencies, without regard to any conflict of laws statutes or rules. [The agent/broker] further agrees and consents to the jurisdiction of the Federal Courts located within the District of Columbia and the courts of appeal therefrom, and waives any claim of lack of jurisdiction or *forum non conveniens.*

Ex. 2 at III(*i*). Thus, in availing himself of Federal Defendants' program to serve as an agent/broker under the ACA, Plaintiff has consented to the jurisdiction of the District of Columbia federal courts and has waived any argument that the forum is inconvenient for him. Transfer to that district under § 1404(a) should follow.

## LAW AND ARGUMENT

### 1. The Court should transfer this matter to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a).

In addition to memorializing Plaintiff's consent and waiver of any argument that the District of Columbia is inconvenient, the Broker Agreement's forum selection clause furthers the important governmental interest of centralizing all agent/broker related litigation in one forum. Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Furthermore, a "forum-selection clause may be enforced by a motion to transfer under § 1404(a)" and, when such a motion is filed, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). Unlike a motion under 28 U.S.C. § 1406(a), a § 1404(a) motion does not condition

4

transfer on the initial forum's being "wrong." Rather, it provides a "mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.* at 59. Here, Federal Defendants do not argue that the Eastern District of North Carolina is an improper forum under 28 U.S.C. § 1391. Federal Defendants, consequently, do not seek dismissal pursuant to Fed. R. Civ. P. 12(b)(3) and/or transfer under § 1406(a). Section 1404(a) is the proper mechanism.

The U.S. Supreme Court explained the process for weighing § 1404(a) motions to transfer in *Atlantic Marine Construction Company*. 571 U.S. 49 (2013). "Ordinarily," the Court recognized, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62–63 (quoting § 1404(a)). When, as here, there is a valid forum selection clause, that clause should be "given controlling weight in all but the most exceptional cases." *Id.* at 63 (cleaned up). As a result, the "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* First, Plaintiff's chosen forum "merits no weight." *Id.* Second, the court should not consider "arguments about the parties' private interests" and, "[a]s a consequence, a district court may consider arguments about public-interest factors only." *Id.* at 64. Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* Ultimately, "[t]he question of transfer [is] a matter resting in the sound discretion of the District Judge." *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956).

5

Turning to the public-interest factors, such factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Constr. Co.*, 571 U.S. at 63 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). The relevant agreement here is between Plaintiff and the federal government regarding the administration of a federal program. Federal Defendants seek to litigate this case, along with any others that fall under the Broker Agreement, in a centralized judicial district that has deep experience in resolving federal-programs litigation. The District of D.C. is that district and is not more congested than this Court. As the Court is well aware, the Eastern District of North Carolina is a four-judge court managing a robust caseload, one that also includes the many cases currently pending under the Camp Lejeune Justice Act in addition to its normal civil filings. According to statistics from the Administrative Office of the Courts, the four judges of the E.D.N.C. handled approximately 1,044 civil cases in the 12-month period ending on March 31, 2024, while the 12-judge District of D.C. managed 3,150 civil cases during the same timeframe.[3] Thus, Federal Defendants are not seeking to transfer this matter to a more congested judicial district. Furthermore, this matter is not a uniquely local controversy that needs to be decided in North Carolina. It concerns Federal Defendants' reasonable suspicion that Plaintiff engaged in "fraud" and/or

---

[3] "Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2024)" *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2024/03/31 (last accessed July 15, 2024).

"abusive conduct" as an agent/broker in a federally sponsored program under federal law and its implementing federal regulations. D.E. 1 at ¶ 32. Federal Defendants possess the relevant documentary evidence and Plaintiff's alleged wrongdoing affected consumers on exchanges across the country, including those for Florida, Georgia, Missouri, South Carolina, Tennessee, and Texas. *See* D.E. 1 at ¶ 69 & D.E. 1-3 at 2. Finally, this is not a matter proceeding in diversity under 28 U.S.C. § 1332. In sum, Plaintiff challenges Federal Defendants' administration of a federal program. Plaintiff signed the Broker Agreement in order to participate in that program. The Court should enforce the Broker Agreement and transfer this matter to the U.S. District Court for the District of Columbia.

**2. The Court should stay Federal Defendants' deadline for filing responsive pleadings while the Court transfers this matter to the U.S. District Court for the District of Columbia.**

Prior to filing the motion to transfer venue, Federal Defendants contacted Plaintiff's counsel about the forum selection clause. Federal Defendants requested (1) counsel's position on filing a motion to transfer, and (2) a first extension of time to file responsive pleadings. The requested extension was to enable Federal Defendants to finish compiling the relevant documents for the administrative record. Plaintiff's counsel responded that Plaintiff would give consent for an extension for responsive pleadings only if Federal Defendants would forgo the motion to transfer. Preparing the administrative record is burdensome and a necessary part of litigating an administrative case. And the U.S. Attorney's Office in the proper forum should be afforded the opportunity to review the record and prepare the appropriate responsive

7

pleadings. Accordingly, Federal Defendants respectfully request the Court exercise its inherent authority to stay the time for filing responsive pleadings for 60 days following its resolution of the motion to transfer. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Alford v. Del Toro*, Case No. 7:19-cv-00140-FL (E.D.N.C. Sept. 2, 2020 text order) (delaying any further scheduling activities and discovery "pending completion of briefing on the motion now at issue, and decision thereon by this court, so as to promote focus on the issues raised in defendant's motion"). A stay will permit Federal Defendants to finish compiling the administrative record and to timely file responsive pleadings—whether in this district or the District of Columbia—upon resolution of the motion to transfer venue under § 1404(a).

## CONCLUSION

WHEREFORE, for the reasons stated above, Federal Defendants respectfully request the Court grant the motion to transfer and motion to stay, thereby transferring the above-captioned matter to the U.S. District Court for the District of Columbia and staying Federal Defendants' deadline to file responsive pleadings until 60 days after resolving the motion to transfer.

Respectfully submitted, this 16th day of July, 2024.

          MICHAEL F. EASLEY, JR.
          United States Attorney

BY:    */s/ K. Paige O'Hale*
       K. PAIGE O'HALE
       Assistant United States Attorney
       Deputy Chief, Civil Division
       Eastern District of North Carolina
       150 Fayetteville Street, Suite 2100
       Raleigh, NC 27601
       Telephone: (919) 856-4870
       Email: paige.ohale@usdoj.gov
       NC Bar # 44667

*Counsel for Federal Defendants, Xavier Becerra in his official capacity of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services, Chiquita Brooks-LaSure in her official capacity as Administrator of the Centers for Medicare and Medicaid Services, and the Centers for Medicare and Medicaid Services*

# CERTIFICATE OF SERVICE

I hereby certify that on July 16th, 2024, I served a copy of the forgoing motion on below-listed counsel by filing it on CM/ECF.

Christopher W. Jones
Email: Chris.Jones@wbd-us.com

*Lead Attorney for Plaintiff*

                              MICHAEL F. EASLEY, JR.
                              United States Attorney

BY:    */s/ K. Paige O'Hale*
        K. PAIGE O'HALE
        Assistant United States Attorney
        Deputy Chief, Civil Division
        Eastern District of North Carolina
        150 Fayetteville Street, Suite 2100
        Raleigh, NC 27601
        Telephone: (919) 856-4870
        Email: paige.ohale@usdoj.gov
        NC Bar # 44667

*Counsel for Federal Defendants, Xavier Becerra in his official capacity of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services, Chiquita Brooks-LaSure in her official capacity as Administrator of the Centers for Medicare and Medicaid Services, and the Centers for Medicare and Medicaid Services*

10