# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### No. 7:24-CV-409-FL

PHILIP ROESEL,

        Plaintiff,

     v.

UNITED STATES
DEPARTMENT OF HEALTH
AND HUMAN SERVICES, et
al.,

        Defendants.

**MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTIONS TO TRANSFER VENUE AND TO STAY DEADLINE FOR FILING RESPONSIVE PLEADINGS**

Plaintiff Philip Roesel, pursuant to Rules 7.1 and 7.2 of the Local Civil Rules of Practice and Procedure, submits this memorandum in opposition to the "Motion to Transfer Venue and Stay Deadline for Filing Responsive Pleadings" (D.E. 13) filed by Defendants United States Department of Health and Services; Centers for Medicare & Medicaid Services; Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services; and Chiquita Brooks-Lasure, in her official capacity as the Administrator of the Centers for Medicare & Medicaid Services (collectively, the "Defendants").

## NATURE OF THE CASE

By bringing this action under the Administrative Procedures Act ("APA") and the Declaratory Judgment Act, Roesel seeks to reverse the Defendants' unlawful termination of his right to continue serving as an agent–broker for consumers applying for health insurance through Affordable Care Act (the "ACA") exchanges.

1

The Defendants now file these patently meritless motions to create strategic delay and aggravate their already wrongful deprivation of Roesel's livelihood.

## STATEMENT OF FACTS

Roesel—a resident of Wilmington, North Carolina—has been an authorized agent–broker since 2014. (DE 1 ¶¶ 4.) In this profession, he has helped tens of thousands of consumers obtain health insurance through the exchanges created by the Affordable Care Act. (*Id.* ¶ 1.) Each of these consumers consented to his assistance. (*Id.* ¶ 50–65.) On 26 October 2023, however, the Defendants suspended Roesel's authority to act as an agent–broker for 90 days, citing a "reasonable suspicion" that he "may have" engaged in fraud or abusive conduct.[1] (*Id.* at Ex. 2.) Specifically, the Defendants "preliminarily determined" (albeit, incorrectly) that Roesel had enrolled at least ten consumers in health plans without their consent. (*Id.*) The Defendants expressed suspicion that the applications submitted by Roesel on these consumers' behalf contained errors. (*Id.*) Defendants also noted that their "data analytics" revealed other anomalies and concerns. (*Id.*)

Within days, Roesel submitted evidence showing that the ten consumers had, in fact, consented. (*Id.* ¶ 71.) The Defendants nevertheless terminated Roesel on 6 December 2023, claiming that he had failed to "reverse the conclusion of a reasonable suspicion." (*Id.* ¶ 72–73.) In support of this conclusion, the Defendants (1)

---

[1]   Or more precisely: fraud or "abusive conduct that may cause imminent or on-going consumer harm using personally identifiable information of an Exchange enrollee or applicant or in connection with an exchange enrollment or application."

interpreted "consent" documentation requirements in a new, arcane, and highly technical way, (2) noted that Roesel had not rebutted the general allegation that the ten applications contained errors of some kind, and (3) observed that Roesel had not challenged the existence of anomalous data analytics. (*Id.*)

Roesel promptly sought additional information about the unknown errors in the applications and the supposed data analytics. (*Id.* ¶ 75.) The Defendants refused to supply them. (*Id.* ¶ 76.) Instead, the Defendants merely provided the names for an additional 129 consumers who, they said, had complained about Roesel in the previous two years. (*Id.* ¶ 74.)

Despite the Defendants' obfuscation, Roesel submitted a comprehensive request for reconsideration, enclosing voluminous evidence and a supporting affidavit showing that:

- Each of the identifiable additional consumers had also consented;

- The Defendants' new standard for documenting consent was not in effect at the time he assisted any of the consumers;

- Any errors in the applications would necessarily have been the result of incorrect information submitted by the consumers themselves and Roesel would have had no way to know the information was incorrect; and

- Any anomalous data analytics must be the result of the legitimate characteristics of Roesel's business, including its large volume and its particular customer base.

(*Id.* at Ex. 4 & 5.)

But the Defendants were intransigent. They concluded yet again that Roesel had failed to demonstrate their preliminary findings were incorrect, and they refused to reinstate him. (*Id.* at Ex. 6.) In short, the Defendants stripped Roesel of his occupation simply because they found that he had failed to prove a negative (*i.e.*, that Defendants' secret evidence could not support a "reasonable suspicion" that Roesel "may have" engaged in fraud or abusive conduct). Notably, and contrary to the governing regulation, the Defendants have never actually found that Roesel engaged in fraud or abusive conduct.[2]

The Defendants' Kafkaesque machinations have had a brutal real-world impact: Roesel has been arbitrarily deprived of his livelihood. He filed this action seeking to right this wrong as promptly as the law allows.

The Defendants, however, are in no hurry. After allowing their already-generous 60-day response period to expire, they filed this non-colorable venue-transfer motion and a dodgy motion to "stay" their answer deadline. (D.E. 13.) Because these groundless motions seem transparently designed to accomplish nothing but maximizing Roesel's unemployment, Roesel requests that the Court quickly deny both motions.

---

[2] *See, e.g.*, C.F.R. § 155.220(g)(5)(i)(B) & (g)(5)(ii) (allowing for-cause termination only when the agency has made a "finding or determination . . . that the [agent–broker] engaged in fraud, or abusive conduct").

4

**ARGUMENT**

## I.   THE MOTION TO TRANSFER SHOULD BE DENIED

The Defendants concede that venue is proper in this Court. (D.E. 14 at 5.) But they seek to transfer this case to the District Court for the District of Columbia under the federal codification of the *forum non-conveniens* doctrine. (*Id.* at 4–5 (citing 28 U.S.C. § 1404(a)).) They argue that the truncated *Atlantic Marine* analysis, which weighs in favor of transfer, should be employed because a "forum-selection clause" is in play in this case. *(Id.* at 4–5 (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013)).) Perhaps as a consequence, the Defendants do not attempt to argue meaningfully that traditional *forum non-conveniens* factors weigh in favor of transfer.

However, Defendants' motion contains a fatal error. They mistake a *consent-to-jurisdiction* clause for a *forum-selection clause.* No forum-selection provision exists here. As a result, the abbreviated *Atlantic Marine* analysis is inapposite, and Defendants' motion to transfer should be denied because their arguments fall far short of satisfying their burden under the ordinary *forum non conveniens* calculus.

### A. Atlantic Marine *does not apply to this case*

Defendants argue that transfer is appropriate because (1) Roesel is bound by a Broker Agreement[3] containing a "forum-selection" clause and (2) under *Atlantic Marine*, valid forum-selection clauses should be enforced by 28 U.S.C. § 1404(a)

---

[3]   The colloquially known "Broker Agreement" is more formally known as the "Agent Broker General Agreement for Individual Market Federally-Facilitated Exchanges and State-Based Exchanges on the Federal Platform."

5

transfer orders unless "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor transfer." (D.E. 14 at 4 (citing 571 U.S. at 52).) Roesel does not concede that the clause flagged by Defendants is valid or applicable.[4] However, even imagining, *arguendo*, that the clause was valid and applicable, Defendants' argument would fail. The provision is not a forum-selection clause governed by *Atlantic Marine*, but rather a consent-to-jurisdiction clause subject to the traditional *forum non conveniens* analysis.

### i. The clause at issue is a consent-to-jurisdiction clause

There are two common types of contract clauses relating to venue: (1) forum-selection clauses and (2) consent-to-jurisdiction clauses.[5] The former "contain clear language that litigation will proceed *exclusively* in the designated forum." 14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.) (emphasis added). The latter, by contrast, "authorize jurisdiction and venue in a designated forum, but *do not prohibit litigation*

---

[4] The validity of the Broker Agreement is suspect for many reasons, including because (1) it does not expressly contemplate any consideration flowing to Roesel and (2) it seeks to expand and modify the terms of the agent–broker program while bypassing the formal rulemaking requirements of the APA. The applicability of the "forum selection clause" is also questionable because this case does not involve claims related to enforcement of the Broker Agreement. In this action, Roesel merely seeks a declaration that Defendants' actions, among other things, did not comply with applicable *laws* and *regulations*.

[5] Courts often refer to forum-selection clauses as "mandatory forum selection clauses" and consent-to-jurisdiction clauses as "permissive forum selection clauses." Because Defendants seem confounded by these too-similar labels, Roesel will use the more precise terms. *See, e.g.*, *S&D Coffee v. GEI Auto-wrappers*, 995 F. Supp. 607 (M.D.N.C. 1997) (noting that a "permissive forum selection clause . . . is perhaps more appropriately referred to as a 'consent to jurisdiction' clause").

6

*elsewhere.*" *Id.* (emphasis added); *see also, e.g.*, Leandra Lederman, *Viva Zapatas : Toward A Rational System of Forum-Selection Clause Enforcement in Diversity Cases*, 66 N.Y.U.L. Rev. 422, 467 n.10 (1991) (noting that a consent-to-jurisdiction clause "merely specifies a court empowered to hear the litigation, in effect waiving any objection to personal jurisdiction and venue. . . . Such a clause is 'permissive' since it allows the parties to air any dispute in that court, without requiring them to do so.")

To determine which species of clause was intended, federal courts apply the "general maxim" that "an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007). When the language does not "prohibit jurisdiction in another [court]," the provision is simply a consent to jurisdiction clause. *Id.*

In this case, the Broker Agreement itself explicitly labels the relevant provision as a "Consent to Jurisdiction" clause. That clause reads:

> [Roesel] further agrees and consents to the jurisdiction of the Federal Courts located within the District of Columbia and the courts of appeal therefrom, and waives any claim of lack of jurisdiction or forum non conveniens.

The text does not say that Roesel "shall" file any future lawsuits in D.C. federal courts or that disputes between the parties "shall be heard in. . . ." It lacks any language hinting at exclusivity, such as "only," "sole," or "exclusive." Nowhere does it prohibit the parties from filing elsewhere. Clearly, it is a consent-to-jurisdiction clause. Indeed, this is not a close call.

7

### ii. **Atlantic Marine** *does not apply to consent-to-jurisdiction clauses*

In their motion, Defendants rely exclusively on *Atlantic Marine* to argue that transfer should be a foregone conclusion. (*See* D.E. 14, at 4–5.) For some reason, Defendants have turned a blind eye to volumes of binding and persuasive authority holding that *Atlantic Marine* does not apply to consent-to-jurisdiction clauses.

In *Atlantic Marine*, the Supreme Court was faced with a forum selection clause providing that "all disputes between the parties '*shall be* litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Easter District of Virginia, Norfolk Division.'" 571 U.S. at 53 (emphasis added). When the plaintiff sued elsewhere, the defendant moved to transfer under Section 1404(a). *Id.* The Supreme Court noted that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system" and therefore it "entail[s] the same balancing-of-interest standard" as its common-law cousin. *Id.* The Court held, however, that in this analysis, a "valid forum-selection clause," *id.* at 62 & n.5, "should be given controlling weight in all but the most exceptional circumstances." *Id.* at 63. This heavily biased analysis was appropriate, the Court noted, because the "plaintiff agree[d] by contract to bring suit *only* in a specific forum—presumably in exchange for other binding promises by the defendant." *Id.* (emphasis added). "When parties have contracted in advance to litigate disputes [only] in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66. Thus, enforcing forum-selection clauses through Section 1404(a) transfers, was the best way to

"protect[ ] [the parties'] legitimate expectations and further[ ] vital interests of the justice system." *Id.* at 63.

*Atlantic Marine* is silent as to consent-to-jurisdiction clauses. But the Fourth Circuit has squarely held that (1) the *Atlantic Marine* analysis applies only to forum-selection clauses and (2) courts are to employ the traditional analysis in the context of consent-to-jurisdiction clauses. *BAE Sys. Tech. Sol. & Services, Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018) (noting that, if a contract contains a consent-to-jurisdiction clause, "the traditional *forum non conveniens* analysis applies and [the defendant] bears a 'heavy burden' in opposing [plaintiff's chosen] alternative forum."). This unequivocal holding appears to be in accord with the holding of every single other court that has ever considered argument on this issue. *See, e.g.*, *Lion Fed. Credit Union v. Worldpay, LLC*, 1:23-CV-1001, 2024 WL 1287631, at *3 (W.D. Ark. Mar. 26, 2024); *PTW Energy Services, Inc. v. Carriere*, 19-CV-01436-REB-NYW, 2019 WL 3996874, at *5 (D. Colo. Aug. 23, 2019); *FCCI Ins. Co. v. Nicholas Cnty. Library*, 5:18-CV-038-JMH, 2019 WL 1234319, at *4 (E.D. Ky. Mar. 15, 2019); *Pro Step Mktg., Inc. v. Real Estate Webmasters, Inc.*, 516CV00072RLVDSC, 2017 WL 3595489, at *8 (W.D.N.C. Aug. 21, 2017); *Bristlecone, Inc. v. Smith & Nephew, Inc.*, 5:17-CV-00640-HRL, 2017 WL 2666763, at *2 (N.D. Cal. June 20, 2017); *UEK Corp. v. Univ. of Manitoba*, CV GLR-13-3832, 2015 WL 11027769, at *2 (D. Md. Mar. 26, 2015); *RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F. Supp. 3d 1073, 1085 (S.D. Iowa Mar. 5, 2014); *Networld Communications, Corp. v. Croatia Airlines, D.D.*, CIV.A. 13-4770 SDW, 2014 WL 4724625, at *2 (D.N.J. Sept.

9

23, 2014); *Fin. Cas. & Sur., Inc. v. Parker*, CIV.A. H-14-0360, 2014 WL 2515136, at *3 (S.D. Tex. June 4, 2014). *See also, e.g.*, *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par. ex rel. Jefferson Par. Council*, 594 Fed. Appx. 820, 820 (5th Cir. 2014) (noting that the unanimity on this point was so overwhelming that there was no "substantial grounds for difference of opinion.")

Defendants' stunning failure to cite *any* of this authority is as shameful as it is inexplicable. Prior to Defendants' filing, as part of the meet-and-confer process, Roesel's counsel informed Defendants' counsel of the difference between a forum-selection-clause and a consent-to-jurisdiction clause made clear that the language in the Broker Agreement is the latter. The undersigned explained, "We don't think a motion to change venue on this basis would be warranted by existing law. . . . We suggest reconsidering the motion to change venue." (*See* DE 16-1 (email between counsel)). Defendants chose to file anyway—without acknowledging any of the binding or persuasive authority undermining their position. This stunning lack of candor in the face of contrary knowledge and contrary binding authority, when coupled with Defendants' refusal to file a timely responsive pleading, betrays their intended strategy to bleed Roesel dry through unnecessary legal expenses and intolerable delay. The Court should not be misled. *Atlantic Marine* is inapposite and has no place in the Court's analysis

**B. Defendants have not shown—and cannot show—that the *forum non conveniens* factors weigh in favor of transfer**

Under the traditional approach, the movant must persuade the Court that the convenience of the parties, the convenience of the witnesses, or the interest of justice warrant a change of venue. 28 U.S.C. § 1404(a). In this analysis, the plaintiff's choice of venue is given substantial weight. "It is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer." *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, 928 F. Supp. 2d 863, 868 (E.D. Va. 2013) (cleaned up); *see also SAS Inst., Inc. v. World Programming Ltd.*, 468 Fed. Appx. 264, 265 (4th Cir. 2012) (noting that a *forum non conveniens* movant "bears a heavy burden in opposing the plaintiff's chosen forum."); *DMP Corp. v. Fruehauf Corp.*, 617 F. Supp. 76, 77 (W.D.N.C. 1985) ("Movant . . . must make out a clear or strong case by showing more than a bare balance of convenience in his favor and that a transfer does more than merely shift the inconvenience").

Without the help of *Atlantic Marine*, Defendants fall far short of carrying their burden. They merely argue that (1) District of D.C. judges are slightly more busy than judges in the Eastern District of North Carolina (with a caseload of 263 and 261 cases per judge, respectively), (2) this case does not involve a controversy that is "uniquely local" to North Carolina, (3) the Defendants possess evidence in the District of Columbia, and that (4) this is not a diversity case. (DE 14, at 7–8.) Their argument is so weak that it can be rebutted simply by summarizing it. But, at the risk of stating the obvious: it is not more convenient to send the case to a marginally busier district. It does not matter whether *North Carolina* has a local interest in the case when

11

Defendants failed to show that the *District of Columbia* does. The fact that Defendants possess electronically stored evidence in the District of Columbia does not outweigh the fact the Plaintiff has his evidence in North Carolina. Electronic production of such documents is not difficult. And the Court's basis for subject-matter jurisdiction has nothing to do with whether a different forum—which would have the same subject-matter jurisdiction—is best.

Clearly, none of these factors weigh in favor of transfer to the District of Columbia district, much less with the force necessary to override the strong presumption in favor of Plaintiff's chosen venue.[6] Defendants transparently seek to make this litigation more inconvenient for Roesel—presumably for the purpose of increasing their merit-blind leverage.

Because the Defendants have failed to carry their burden, the Motion to Transfer should be denied.

## II. THE MOTION TO STAY SHOULD BE DENIED

In their Motion to Stay, Defendants improperly seek to invoke the Court's inherent powers in hopes of bypassing the Federal Rules of Civil Procedure.[7] (*See*

---

[6] Even if Roesel's choice of venue were not entitled to great weight, the balancing factors do not weigh in favor of Defendant's preferred venue. The "wrongdoing" alleged by the Defendants took place in North Carolina; the electronically stored administrative record will be equally available in either jurisdiction; the flights between Raleigh and Washington, D.C. are short, cheap, and direct; witnesses reside in both jurisdictions; compulsory process is available in both places; no jury site visits will be necessary; and the underlying issues are not unique to Washington, D.C. *See Landers v. Dawson Const. Plant, Ltd.*, 201 F.3d 436 (4th Cir. 1999).

[7] Defendants' Motion to Stay is at least the second time in this nascent case that Defendants plow forward in the face of contrary rules. In terminating Roesel's

D.E. 14 at 8.) The Federal Rules apply nonetheless. Under the Rules, the Defendants have failed to meet their burden for the court to grant an extension of time.

It is well established that a court's inherent powers cannot be used to circumvent procedures and standards expressly set by the Federal Rules. *See, e.g.*, *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute.") The Federal Rules lay out a straightforward process to accomplish what the Defendants seek to do—*i.e.*, extending the time to file a responsive pleading. Such a request must be made via a motion for extension of time. Fed. R. Civ. P. 6.

The standard for this type of motion depends on when it is made. If made before the deadline, the movant must show "good cause." *Id.* If after, the party must also show that they "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Because a court's exercise of its inherent powers must comply with the Federal Rules, this excusable neglect standard applies to late extension requests however they are denominated. *See, e.g.. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895 (1990) ("Rule 6(b) sets out the proper approach in the case of late filings[.]"); *see also, e.g.*, *Pigford v. Johanns*, 416 F.3d 12, 21 (D.C. Cir. 2005) (holding that the lower court properly

---

livelihood, the Defendants ignored their own rules, which expressly require a "finding or determination" that fraud or abusive conduct *actually* took place. Contrary to these rules, Defendants improperly terminated Roesel based on a misguided "suspicion" that Roesel "may have" engaged in wrongdoing. *See, e.g.*, C.F.R. § 155.220(g)(5)(i)(B) & (g)(5)(ii).

applied the "'excusable neglect' standard in exercising its inherent authority" and rejecting untimely petitions for review); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 231 (2d Cir. 2002) (noting that, although commission had "inherent authority to reconsider or reopen its own deemed orders," the appropriate standard was still "upon a finding of excusable neglect"); *Hanks v. Anderson*, 219CV00999DBBDAO, 2023 WL 8936279, at *3 (D. Utah Dec. 27, 2023) (noting that the excusable neglect standard applies to extension requests even when directed to the court's inherent authority).

Here, Defendants did not timely serve or file a responsive pleading. The Federal Rules bestow a very generous response period on federal agencies and United States employees sued in their official capacity: they must serve a responsive pleading "within 60 days after service on the United States Attorney." Fed. R. Civ. P. 12(a)(2). In this case, the United States Attorney was served with a summons and complaint for each Defendant on 15 May 2024. (*See* D.E. 8–14.) Accordingly, the Defendants' responsive pleadings were due on Monday, 15 July 2024. *See* Fed. R. Civ. P. 6(a) (automatically extending deadline to the next business day when a deadline falls on a Sunday). But Defendants did not file or serve anything before the 15 July 2024 deadline expired. They filed their Motion to Stay on 16 July 2024—a day late.[8]

---

[8] The filing of a motion to stay does not relieve Defendants of the burden and obligation to timely respond to the Complaint. *See, e.g.*, *Ringelberg v. Vanguard Integrity Professionals-Nevada, Inc.*, No. 2:17-cv-01788-JAD-PAL, 2018 WL 3186938, at *3 (D. Nev. June 28, 2018) ("A motion to stay does not stay a case—only an order granting the motion does.").

In making their motion, Defendants have not attempted to show "good cause," much less "excusable neglect." Their reluctance is perhaps understandable. "Excusable neglect is not easily demonstrated[,]" and a court should only find excusable neglect in "extraordinary cases where injustice would otherwise result." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). The Fourth Circuit has held that "'a party that fails to act with diligence will be unable to establish that [its] conduct constituted excusable neglect.'" *Martinez v. United States*, 578 F. App'x 192, 194 (4th Cir. 2014) (quoting *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 413 (4th Cir. 2010)). For example, where "a reasonably diligent attorney" could have noticed or cured the error which resulted in a late filing, a party "cannot establish that [its] conduct constituted excusable neglect." *Id.*

Defendants have not asserted any facts demonstrating the reason for their untimely filing, much less that they acted with diligence, that injustice would result in the absence of an extension, or that no reasonably diligent attorney could have filed a responsive pleading or motion on time. Consequently, Defendants' motion should be denied.

## CONCLUSION

The Motion to Transfer should be denied because Defendants have not shown that the *forum non conveniens* factors weigh in favor of transfer. The Motion to Stay should be denied because Defendants have not shown that their failure to file a timely extension motion was the result of excusable neglect.

This the 23rd day of July, 2024.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Jesse Schaefer
Christopher W. Jones
(N.C. State Bar No. 27265)
Jesse Schaefer
(N.C. State Bar No. 44773)
Brian F. Castro
(N.C. State Bar No. 53412)
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Phone: (919) 755-8173
Fax: (919) 755-6771
Email: Chris.Jones@wbd-us.com
Jesse.Schaefer@wbd-us.com
Brian.Castro@wbd-us.com

*Counsel for Plaintiff Philip Roesel*

## CERTIFICATE OF SERVICE

I hereby certify that on 23 July 2024, the foregoing **Memorandum in Opposition to Federal Defendants' Motions to Transfer Venue and to Stay Deadlines for Filing Responsive Pleadings** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the Defendants' counsel of record as follows:

> K. Paige O'Hale K.
> (N.C. State Bar No. 44667)
> Assistant United States Attorney
> Deputy Chief, Civil Division
> Eastern District of North Carolina
> 150 Fayetteville Street, Suite 2100
> Raleigh, NC 27601
> Telephone: (919) 856-4870
> Email: paige.ohale@usdoj.gov

> *Counsel for Defendants Xavier Becerra in his official capacity of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services, Chiquita Brooks-LaSure in her official capacity as Administrator of the Centers for Medicare and Medicaid Services, and the Centers for Medicare and Medicaid Services*

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ Jesse Schaefer
Jesse Schaefer
(N.C. State Bar No. 44773)

*Counsel for Plaintiff Philip Roesel*

17